UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| ALLAN THOMAS | CIVIL ACTION NO. 13-2326 |
| VERSUS | JUDGE ROBERT G. JAMES |
| FRED HILL, ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

This is an employment discrimination action brought by Plaintiff Allan Thomas

("Thomas") against his former employer, Defendant Fred Hill, Jr. d/b/a/ Home Appliance Parts

and Service, Skent-N-Dent Outlet, Hillco Overhead Doors and Hillco Properties City of Monroe

("Hill").  Thomas alleges that Hill discharged him in violation of the Americans with Disabilities

Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

Hill filed the instant Motion for Summary Judgment [Doc. No. 16].  Thomas filed an

opposition memorandum [Doc. No. 20].  Hill filed a reply memorandum [Doc. No. 21].  For the

following reasons, Hill's Motion for Summary Judgment is DENIED.

I.      FACTS

Thomas and Hill have a long history.  Thomas, who is now approximately 55 years old,

was taken in by the Hill family and began living with them at the age of 15 or 16.  At that time,

he began working for Hill at his appliance store and continued to do so for four or five years

when he left to pursue other employment opportunities.

In 2002, Hill hired Thomas to work at his various businesses as an "at will" employee.

Hill described Thomas as "very honest" and a hard worker, [Doc. No. 20, Exh. 2, p. 19] but he

contends that Thomas had some issues getting along with other employees.  Because of this

alleged discord, Hill placed Thomas in the position of "floater"/parts manager/general manager.

Thomas moved to different areas of Hill's businesses (Home Appliance Parts and Service, Skent-

–Dent Outlet, Hillco Properties, and Hillco Overhead Doors) as needed.  Among other duties,

Thomas waited on customers at the parts counter and oversaw inventory, parts, and appliances.

Hill claims that Thomas was often condescending and sarcastic when addressing Hill, his boss.

On February 11, 2011, Thomas sent a letter to Hill detailing his alleged unfair treatment

and requesting benefits.  After the letter, Hill considered firing Thomas, but instead continued to

employ him and provided him with a life insurance policy for which Hill paid the premiums.

On May 14, 2012, Thomas was admitted to the hospital with chest pains.  The following

day, Thomas underwent triple by-pass heart surgery.  On the day of Thomas' surgery, Hill's

office manager, Sandra Trichell ("Trichell"), submitted a claim to Lincoln Financial Group,

Hill's disability insurance carrier and represented that accommodations would be made for

Thomas when he returned to work after his surgery, such as helping at the parts desk and

performing paperwork.

On May 31, 2012, Thomas emailed Hill and co-workers about his progress, describing

the pain he was in.  He stated in the e-mail that he would "be back when the doctor releases me."

On June 4, 2012, Thomas emailed Hill that he was having difficulty sleeping because of pain.

From this email, Hill understood that Thomas was not able to return to work.  On June 6, 2012,

Thomas responded to an email from Hill and stated that he was "exhausted and in a lot of pain."

Hill again understood that Thomas was not able to return to work.

On June 13, 2012, Thomas' cardiac surgeon, Dr. Syed A. Mehmood, provided a note to

him, stating that he would not be able to return to work before his next doctor's appointment on

July 4, 2012.  The note stated that Hill could contact Dr. Mehmood's office with questions.

Trichell discussed the note with Hill, but Hill did not contact Dr. Mehmood.

On June 18, 2012, the disability insurance carrier's representative, Jason Nadeau

("Nadeau"), notified Hill that Thomas' disability benefits were extended from July 4, 2014, to an

undetermined date.

Some time in July, Hill visited with Thomas at his home and suggested that Thomas

come in to the office for an hour or two, but Thomas did not respond.  Hill's wife, Pam Hill,

testified that they were concerned about Thomas' absence from work and Hill's having to find

ways to cover Thomas' jobs in his absence.

On July 9, 2012, Trichell wrote Nadeau, telling him that Thomas would have restrictions

with walking and moving appliances upon his return, but assuring him that Hill would

accommodate any restrictions Thomas might have.

On July 14, 2012, Thomas began rehabilitation from his heart surgery.  On July 17, 2012,

Thomas emailed Hill and other employees, stating that he would be "back before you know it."

On August 9, 2012, Hill mailed a termination letter to Thomas.  According to his

deposition, the letter contained the "sum total of reasons" for Thomas' termination.   The letter

stated that "[i]t's been almost three months since your surgery and I haven't gotten any indication

from you that you intend to return to work."  He stated further:

> I can only assume you do not plan on returning.  Actually, that is probably a good
> idea since you stated on your insurance form that the reason for your heart
> problem was 'a very stressful environment' & that your heart problems were
> caused by your occupation.  That being the case, I believe you should look for
> another job, one that will not create so much stress.  There should be no better

reason to change jobs than your health.

Hill went on to say that by terminating Thomas he could reduce expenses and "streamline" the business.  Hill admitted in his deposition that no longer having to pay the disability insurance and medical insurance for Thomas was part of the cutting of his expenses.

Despite his testimony that the reasons for Thomas' termination were all contained in the letter, Hill also testified in his deposition that before terminating Thomas' employment, he thought about Thomas's "negative and derogatory" attitude toward him, looked at Thomas' file, and decided that "'this is the time to do this and go ahead and get this done.'"  [Doc. No. 16, Exh. 2, pp. 108-109].  He had not heard anything from Thomas in "two or three weeks" and "decided that he probably wasn't coming back," so when "the disability thing ran out, . . . he would go somewhere else." [Doc. No. 16, Exh. 2, p. 109].

Prior to his termination, Thomas had never been suspended, demoted, or reprimanded, and had received salary increases over the years.  At that time, Hill had at least twenty (20) employees working for him at least twenty (20) calendar days during the year.

Thomas remained in rehabilitation until his release on September 4, 2012.  At both the time of his termination and with his release from medical care, Thomas was able to perform the functions of his job that did not involve physical labor.  Although there was a note on his September 4, 2012 release indicating that he should not lift more than 5-10 pounds, that he should not drive, and that he should keep his wound washed and cleaned, this was the identical note on his July, 2014 doctor's note.  Hill has asserted, and Thomas appears to agree, at least in part, that this was a clerical error.  Thomas never returned to Dr. Mehmood, however, allegedly because of his loss of health insurance.

On September 12, 2012, Hill hired Frank Fontana to work in the parts department. Fontana does not have any physical limitations.  Hill had already hired Roger Lawrence in sales and Lloyd Allan in May 2012, the month Thomas had a heart attack.  Neither of these two employees have physical limitations either.

On October 15, 2012, Thomas filed a charge of discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination.  In his response to the EEOC, Hill said that he had no updates or explanations of when Thomas would return to work.

Since December, 2012, Thomas has worked paper mill shut downs driving a fork lift. However, he has testified that he continues to be limited in his ability to perform physical labor, working, walking, lifting, running, sleeping, and sex.

Consistent with the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. 23:303(C), on May 21, 2013, Thomas gave written notice to Hill, through a certified letter, that he believed he had been discriminated against and that he intended to initiate court action.

On July 23, 2013, after having received his notice of right to sue from the EEOC, Thomas timely filed a Complaint in this Court, asserting disability discrimination claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111(5)(A) and within the meaning of the LEDL.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).  The

moving party bears the initial burden of informing the court of the basis for its motion by

identifying portions of the record which highlight the absence of genuine issues of material fact.

*Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its

existence or nonexistence would affect the outcome of the lawsuit under applicable law in the

case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact

is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the

nonmoving party.  *Id*.

    If the moving party can meet the initial burden, the burden then shifts to the nonmoving

party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache

Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court

must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its

favor. *Anderson*, 477 U.S. at 255.  "Credibility determinations, the weighing of the evidence,

and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."

*Id.*; *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) (quoting

same).

    B.    **ADA and LEDL**

    The ADA prohibits discrimination by an employer "against a qualified individual on the

basis of a disability" in any of the "terms, conditions, [or] privileges of employment." 42 U.S.C.

§ 12112(a).  A "qualified individual" is "an individual who, with or without reasonable

accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* at § 12111(8).

Congress made significant changes to the ADA by enacting the ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110–325, 122 Stat. 3553, which became effective on January 1, 2009. "In crafting the ADAAA, Congress intended 'that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations[ ] and . . . that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.'" *Neely v. PSEG Texas, Ltd. Partnership* 735 F.3d 242, 245 (5th Cir. 2013) (quoting FN1. Pub.L. No. 110–325, § 2(b)(5), 122 Stat. 3553 (Sept. 25, 2008) (codified at 42 U.S.C. § 1201 (Note)). The post-ADAAA statutory and case law are applicable here.[1]

Under the ADA, as amended by the ADAAA, "the term 'disability' means, with respect to an individual-- (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing,

---

[1]Notably, "the ADAAA primarily focuses on broadening the definition of 'disability' by singling out and superseding *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), and *Toyota Motor Manufacturing Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). . . Because those two decisions interpreted congressional intent to narrow the scope of the words 'substantially limits' and 'major' and the 'regarded as' prong in the ADA's definition of disability, . . . Congress added 42 U.S.C. § 12102(2)- (4) to correct that perceived misinterpretation." *Neely*, 735 F.3d at 245, 245 n.2 (citing Pub.L. No. 110–325, § 2(a)(4)-(6), (2)(b)(2)-(5)). Thus, Hill's reliance on *Sutton* and pre-ADAAA case law, to the extent at odds with the amendments, is **clearly** misplaced.

hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12102(2)(A).

"An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment **whether or not the impairment limits or is perceived to limit a major life activity**." 42 U.S.C. § 12102(3)(A) (emphasis added).[2]   However, an individual cannot base a "regarded as" claim on "impairments that are transitory and minor.  A transitory impairment is an impairment with an actual or expected duration of 6 months or less."  42 U.S.C. § 12102(3)(B).

The ADAAA "makes it easier to prove a disability, [but] it does not absolve a party from proving one." *Neely*, 735 F.3d at 235.  If an ADA plaintiff bases his case on circumstantial evidence, the Court applies the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See McInnis v. Alamo Cnty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000).  Under that framework, a plaintiff must establish a prima facie case of disability discrimination by showing: (1) he is disabled or regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. *Id.* at 279–80.  Once the plaintiff makes a prima facie showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer provides such a reason, the burden shifts back to the plaintiff to establish that the articulated

---

[2]Thus, as amended, § 12102 no longer requires a "regarded as" plaintiff to show that his employer perceived him to have an impairment limiting a major life activity.

reason was false or a pretext for the claimed discrimination.  *Richard v. DuPont Co.*, 396 Fed.

App'x 168, 169-70 (5th Cir. 2010) (citing *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503,

511 (5th Cir. 2003)); *see also Woodson v. Scott and White Mem'l Hosp.*, 255 Fed. App'x 17, 20

(5th Cir. 2007) ("A plaintiff can establish pretext 'either through evidence of disparate treatment

or by showing that the employer's proffered explanation is false or unworthy of credence.'"

(quoting *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).  "The pretext inquiry focuses

on the authenticity of the employer's proffered reasons." *Id.*

The LEDL, La. Rev. Stat. 23:323, essentially tracks the ADA.  *See McClain v. City of*

*New Orleans*, 137 So.3d 671, 676 n.2 (La. App. 4 Cir. 2014) (("La. R.S. 23:301, *et seq.*,

comprises the Louisiana Employment Discrimination Law, which is modeled after the Americans

with Disabilities Act of 1990, 42 U.S.C.A. § 12101, *et seq.*").  A "[d]isabled person" is defined

as "any person who has a physical or mental impairment which substantially limits one or more

of the major life activities, or has a record of such an impairment, or is regarded as having such

an impairment." La. Rev. Stat. 23:322(3).  Given the similarity between the laws, courts have

typically applied the  *McDonnell–Douglas* burden-shifting framework to these claims as well.

*See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (applying

*McDonnell–Douglas* framework to ADA claim).  The Fifth Circuit has noted in a recent

unpublished decision that it is "not clear" that Louisiana courts do apply *McDonnell–Douglas* to

LEDL disability discrimination claims.  *Bell v. Hercules Liftboat Co., L.L.C.*, 524 Fed. App'x.

64, 67 n.10 (5th Cir. 2013).  However, at the least,  the *Bell* Court decision recognized that a

plaintiff must show that he was (1) "disabled" (as defined by Louisiana statute) (2) "qualified" at

the time of the complained-of employment action, and that the employer took the adverse

employment action "because of his disability." *Bell*, 524 Fed. App'x at 67 n.10 (quoting *Lindsey v. Foti*, 81 So.3d 41, 44 (La. App. 1ˢᵗ Cir. 2011); *Hook v. Georgia–Gulf Corp.*, 788 So.2d 47, 53 (La. App. 1ˢᵗ Cir. 2001)).

Thomas' Complaint did not clearly identify the type of disability claim asserted.  In his Motion for Summary Judgment, Hill contends that Thomas cannot prevail on any of the three types of disability claims under the ADA and LEDL.  In opposition, Thomas argues that he has raised genuine issues of material fact for trial as to whether he is actually disabled or regarded as disabled.  Thus, to the extent that Thomas' Complaint might otherwise be read to assert a claim for record of disability, he is apparently not proceeding with such claim, and Hill is entitled to summary judgment.  As to the other types of claims of disability under the ADA and LEDL, the Court finds that Thomas has raised genuine issues of material fact for trial, and Hill's Motion for Summary Judgment must be denied.

### 1.      Actual Disability

First, Thomas contends that Hill violated the ADA and the LEDL by discriminatorily discharging him because of his disability: his heart condition and resulting restrictions.  Hill moves for summary judgment, arguing that Hill cannot establish a *prima facie* case because he cannot show that he was disabled, that he was qualified for his job, or that he was replaced by or treated less favorably than other non-disabled employees.  Even if the Court were to find that Thomas met his *prima facie* burden, Hill argues that Thomas was legitimately discharged for failure to convey when he wanted to or would return to work, and that Thomas cannot show that the reason for his discharge was pretextual or that his disability was a motivating factor in his discharge.

Hill does not dispute, of course, that at the time of discharge, Thomas was recovering from an heart condition necessitating triple bypass surgery and rehabilitation.  Admittedly, Thomas has offered his own testimony about his restrictions, but Hill argues that Thomas cannot show, with any medical evidence, that he actually has these restrictions.

The Court rejects Hill's arguments.   The Court must consider whether Thomas had a disability at the time the adverse employment action was taken on August 9, 2014.  *See generally Bell*, 524 Fed. App'x at 68.  At that time, the record evidence shows that the last note provided by his physician showed that Thomas was still recuperating from his heart surgery and under medical restrictions that prevented him from performing at least one major life activity.  Further, Thomas has otherwise met his *prima facie* burden.  He was a qualified and long-term employee, and Trichell had conveyed to the disability insurance carrier that he could perform his job with accommodations when he came back to work.  Finally, he has pointed out that none of the employees who now perform his previous duties suffer from any physical limitations.[3]

Hill also offered at least some legitimate reasons for Thomas' termination:  that Thomas had not indicated if or when he would return and that he had in mind Thomas' derogatory behavior towards him.  However, those reasons are offset by the contradictory evidence.  Thomas had indicated in his emails to Hill and others that he intended to return to work.  Additionally, although Hill testified that all of his reasons were contained in his letter, he later admitted in his deposition that Thomas' derogatory conduct to him was part of the reason for his termination.  In the letter itself, Hill raised Thomas' medical condition, the need for Thomas to seek a less

---

[3]Thomas also pointed to a number of other employees without physical limitations who were treated more favorably.

stressful job, and Hill's desire to reduce costs.  Yet, before and after Thomas' termination, Hill

hired a total of three employees to perform Thomas' job duties.  Under these circumstances,

Thomas has presented a genuine issue of material fact for trial that Hill's reasons were pretextual

or were, at least in part, false.

Accordingly, Hill's Motion for Summary Judgment on Thomas' claim of actual disability

is DENIED.

### 2.      "Regarded As" Disabled

Even if Thomas is not actually disabled, he may prevail if he can show that Hill regarded

him as disabled and terminated him on the basis of this perceived disability.  Under the post-

ADAAA law, Thomas need only show that Hill terminated him because of his actual or a

perceived physical impairment, **regardless of whether the impairment limits a major life**

**activity**.  *See* 42 U.S.C. § 12102(3)(A).  Hill's arguments to the contrary are simply wrong.

Thomas cannot meet his burden, however, if the impairment is "transitory **and** minor."  42

U.S.C. § 12102(3)(B) (emphasis added).

Given the facts in this case, the Court finds that Thomas raised a genuine issue of

material fact for trial as to whether Hill regarded him as having a physical impairment and

terminated him because of his impairment.  In Hill's own letter, he refers to Thomas' heart

condition and the need for Thomas to find a less stressful job.  Further, contrary to Hill's

arguments, the Court cannot say that a heart condition resulting in triple by-pass surgery and

rehabilitation is a transitory and minor impairment.

Additionally, for the reasons noted above, Thomas has otherwise met his *prima facie*

burden and presented sufficient evidence that Hill's reasons for terminating him were pretextual

and/or false.  Therefore, Thomas may proceed to trial on his "regarded as" claim, and Hill's

Motion for Summary Judgment is DENIED as to this claim.

**III.    CONCLUSION**

For the foregoing reasons, Hill's Motion for Partial Summary Judgment [Doc. No. 16] is

GRANTED IN PART and DENIED IN PART.  To the extent that Thomas asserts a claim based

on a record of disability, he has made no arguments to support that claim; therefore, Hill's

Motion for Summary Judgment is GRANTED, and his ADA and LEDL claims under this theory

are DISMISSED WITH PREJUDICE.   To the extent that Hill asserts claims based on actual

disability and that he was regarded as disabled, the Court finds that he has raised genuine issues

of material fact for trial.   Hill's Motion for Summary Judgment is DENIED as to these claims

under the ADA and LEDL.

MONROE, LOUISIANA, this 13th day of August, 2014.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE